# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Samsung Galaxy
IMEI: 352605094628302
FP&F: 2020250300002501

)
)
)
)
)
)

Case No.

OCT 2 9 2019

SOUTHERN ... M C

**19 MJ 11275**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

### SEE ATTACHMENT A
### (INCORPORATED HEREIN)

located in the _____ **Southern** _____ District of _____ **California** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT B
### (INCORPORATED HEREIN)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 952, 960, and 963 | Importation of Controlled Substances |

The application is based on these facts:

### SEE AFFIDAVIT OF SPECIAL AGENT DANNY SAMPLE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Danny Sample, Special Agent**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/29/19__

_____
*Judge's signature*

City and state: El Centro, CA

**Hon. Ruth Bermudez-Montenegro U.S. Magistrate Judge**
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

Samsung Galaxy

IMEI: 352605094628302

FP&F: 2020250300002501

(the "Target Device")

The Target Device is currently in the possession of Homeland Security Investigations, El Centro, California.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 11, 2019 to October 12, 2019:

a.   tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

## **AFFIDAVIT**

I, Special Agent Danny Sample, being duly sworn, hereby state as follows:

## **INTRODUCTION**

1.      I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

Samsung Galaxy

IMEI: 352605094628302

FP&F: 2020250300002501

("Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963, as further described in Attachment B.

2.      The requested warrant relates to the investigation and prosecution of Jonathan MENDEZ ("MENDEZ") for importing approximately 30.74 kilograms (67.77 pounds) of methamphetamine from Mexico into the United States. *See U.S. v. Mendez*, Case No. 19-mj-11078 (S.D. Cal.) at ECF No. 1 (Complaint). The Target Device is currently in the evidence vault located at El Centro, California.

3.      The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

## **BACKGROUND**

4.      I have been employed as a Special Agent with Homeland Security Investigations since January 2018. I am currently assigned to the HSI Office of the Assistant Special Agent in Charge, in Calexico, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

5.      During my tenure with HSI, I have participated in the investigation of various

1

1   drug trafficking organizations involved in the importation and distribution of controlled
2   substances into and through the Southern District of California.

3          6.      Through my training, experience, and conversations with other members of
4   law enforcement, I have gained a working knowledge of the operational habits of narcotics
5   traffickers, in particular those who attempt to import narcotics into the United States from
6   Mexico at Ports of Entry. I am aware that it is common practice for narcotics smugglers to
7   work in concert with other individuals and to do so by utilizing cellular telephones. Because
8   they are mobile, cellular telephones permits narcotics traffickers to easily carry out various
9   tasks related to their trafficking activities, including, *e.g.*, remotely monitoring the progress
10  of their contraband while it is in transit, providing instructions to drug couriers, warning
11  accomplices about law enforcement activity, and communicating with co-conspirators who
12  are transporting narcotics and/or proceeds from narcotics sales.

13         7.      Based upon my training, experience, and consultations with law enforcement
14  officers experienced in narcotics trafficking investigations, and all the facts and opinions
15  set forth in this affidavit, I know that cellular telephones (including their Subscriber
16  Identity Module (SIM) card(s)) can and often do contain electronic evidence, including,
17  for example, phone logs and contacts, voice and text communications, and data, such as
18  emails, text messages, chats and chat logs from various third-party applications,
19  photographs, audio files, videos, and location data.  In particular, in my experience and
20  consultation with law enforcement officers experienced in narcotics trafficking
21  investigations, I am aware that individuals engaged in drug trafficking commonly store
22  photos and videos on their cell phones that reflect or show co-conspirators and associates
23  engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds
24  and assets from drug trafficking, and communications to and from recruiters and
25  organizers.

26         8.      This information can be stored within disks, memory cards, deleted data,
27  remnant data, slack space, and temporary or permanent files contained on or in the cellular
28  telephone. Specifically, searches of cellular telephones may yield evidence:

a.   tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9.   On October 11, 2019, at approximately 6:12 p.m., MENDEZ applied for permission to enter the United States at the Calexico West Port of Entry. Defendant was the driver, registered owner, and sole occupant of a 2008 Nissan Sentra. MENDEZ was referred for secondary inspection, and Customs and Border Protection Officers discovered 20 packages concealed within the passenger side floorboard of MENDEZ's vehicle. The packages weighed approximately 30.74 kilograms (67.77 lbs.), and field-tested positive as methamphetamine. MENDEZ was subsequently arrested and the Target Device was seized from him.

10.   Later, agents read MENDEZ his *Miranda* rights, but he declined to speak to agents without an attorney present. During the initial processing of MENDEZ, I observed from the lock screen of the Target Device, 10 missed calls; two each from contacts known as "Omar" and "Rica"; five from a contact known as "Isidrio"; and one missed call from a

contact known as "Odalys." In addition to the missed calls, I observed two new text message notifications on the lock screen, one each from "Odalys" and one from "izzi". Additional calls to the Target Device came in during the processing of MENDEZ from contacts saved as "Omar" and "Isidrio," and a call from a Mexican number which was not assigned a contact name.

11.     In light of the above facts and my own experience and training, there is probable cause to believe that MENDEZ was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. It is common for drug trafficking facilitators to repeatedly contact the individual smuggling the drugs when a pre-established contact time is missed.

12.     In my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on June 11, 2019 to October 12, 2019, which was the day following MENDEZ's arrest. I observed through TECS records that MENDEZ began regularly crossing into the U.S. starting on July 5, 2019, and crossed approximately once a week until September. The crossing pattern is common with other individuals who smuggle drugs through the Ports of Entry.

## METHODOLOGY

13.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

1 | personal digital assistants and have functions such as calendars and full address books and
2 | can be mini-computers allowing for electronic mail services, web services and rudimentary
3 | word processing. An increasing number of cellular service providers now allow for their
4 | subscribers to access their device over the internet and remotely destroy all of the data
5 | contained on the device. For that reason, the device may only be powered in a secure
6 | environment or, if possible, started in "flight mode" which disables access to the network.
7 | Unlike typical computers, many cellular telephones do not have hard drives or hard drive
8 | equivalents and store information in volatile memory within the device or in memory cards
9 | inserted into the device. Current technology provides some solutions for acquiring some of
10 | the data stored in some cellular telephone models using forensic hardware and software.
11 | Even if some of the stored information on the device may be acquired forensically, not all
12 | of the data subject to seizure may be so acquired. For devices that are not subject to forensic
13 | data acquisition or that have potentially relevant data stored that is not subject to such
14 | acquisition, the examiner must inspect the device manually and record the process and the
15 | results using digital photography. This process is time and labor intensive and may take
16 | weeks or longer.

17   14.   Following the issuance of this warrant, I will collect the subject cellular
18 | telephone and subject it to analysis. All forensic analysis of the data contained within the
19 | telephone and its memory cards will employ search protocols directed exclusively to the
20 | identification and extraction of data within the scope of this warrant.

21   15.   Based on the foregoing, identifying and extracting data subject to seizure
22 | pursuant to this warrant may require a range of data analysis techniques, including manual
23 | review, and, consequently, may take weeks or months. The personnel conducting the
24 | identification and extraction of data will complete the analysis within 90 days, absent
25 | further application to this court.

26 | **PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

27   16.   Law enforcement has not previously attempted to obtain the evidence sought
28 | by this warrant.

**CONCLUSION**

17.     Based on the facts and information set forth above, there is probable cause to believe that a search of the Target Device will yield evidence of MENDEZ's violations of Title 21, United States Code, Sections 952, 960, and 963.

18.     Because the Target Device was seized at the time of Defendant's arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on the Target Device.  As stated above, I believe that the appropriate date range for this search is from June 11, 2019 to October 12, 2019.

19.     Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item(s) described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Danny Sample
Homeland Security Investigations

Subscribed and sworn to before me this 29th day of October, 2019.

Hon. Ruth Bermudez-Montenegro
United States Magistrate Judge

6

# **ATTACHMENT A**

## PROPERTY TO BE SEARCHED

The following property is to be searched:

Samsung Galaxy

IMEI: 352605094628302

FP&F: 2020250300002501

(the "Target Device")

The Target Device is currently in the possession of Homeland Security Investigations, El Centro, California.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.  The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 11, 2019 to October 12, 2019:

    a.    tending to indicate efforts to import methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.